UNITED STATES *v.* BORDER BROKERAGE CO., NORMAN G. JENSEN, INC.
(No. 5102)*

United States Court of Customs and Patent Appeals, January 16, 1963

*Joseph D. Guilfoyle,* Acting Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section, *Mollie Strum (Richard H. Welsh,* of counsel) for the United States.

*Barnes, Richardson & Colburn, Glad & Tuttle (Joseph Schwartz* and *Edward N Glad,* of counsel) for appellees.

[Oral argument November 8, 1962, by Miss Strum and Mr. Schwartz]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges

WORLEY, Chief Judge, delivered the opinion of the court:

The Government alleges that the Customs Court committed reversible error in allowing appellees' claim for free entry of certain merchandise under the provisions of Public Law 869, 81st Congress (64 Stat. 1093).

Involved are eight shipments of steel imported from Canada and subsequently exported to Japan. No processing, other than cutting for convenience in shipping, was done in this country.

The collector classified the merchandise under three different provisions of the Tariff Act of 1930, viz, as structural shapes of iron or steel, advanced beyond casting, hammering, or rolling, under paragraph 312, as modified by the Torquay Protocol of the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739; as plate steel, not thinner than 0.109 inch and valued at not over 3 cents per pound, under paragraph 307, as modified by said Torquay Protocol; and the balance as steel bars, valued at over 3½ cents but not over 4 cents per pound, under paragraph 304, as modified by the Sixth Protocol of Supplementary Concessions to said General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

*C.A.D. 811.

The importers protested, claiming classification as metal scrap, fit only to be remanufactured, within the provisions of Public Law 869 which reads:

Sec. 1 (a) No duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the Internal Revenue Code with respect to metal scrap, or relaying and rerolling rails.

(b) The word "scrap", as used in this Act, shall mean all ferrous and nonferrous materials and articles, of which ferrous or nonferrous metal is the component material of chief value, which are second-hand or waste or refuse, or are obsolete, defective or damaged, and which are fit only to be remanufactured.

Sec. 2. Articles of which metal is the component material of chief value, other than ores or concentrates of crude metal, imported to be used in remanufacture by melting, shall be accorded entry free of duty and import tax upon submission of proof, under such regulations and within such time as the Secretary of the Treasury may prescribe, that they have been used in remanufacture by melting: *Provided, however*, That nothing contained in the provisions of this section shall be construed to limit or restrict the exemption granted by section 1 of this Act.

On the evidence presented by the importers, the Customs Court found as a fact that none of the merchandise, most of which was rusted and pitted, was "so-called reusable steel, that is, steel fit for use in its condition as imported," and held the importations to be "scrap" as that word is defined in section 1(b) of Public Law 869. We think the record supports that finding.

The Government's chief argument below and here is that the legislative history of Public Law 869 shows that Congress intended by the phrase "fit only to be remanufactured" to require that the instant goods be remanufactured in this country, and that the Customs Court erred in not considering that history. In disposing of that contention, the Customs Court stated:

No useful purpose is served in elaborating upon the considerations which prompted Congress to enact Public Law 869, in view of the clear and explicit language it has employed in the law itself to express its intention. *The only limitations which it has imposed on the free admission of metal scrap are those which are found in the definition of the word itself in subdivision (b) of section 1 of the act, no portion of which contains a requirement that remanufacture be performed in the United States.* By contrast, section 2 of the law relating to articles in chief value of metal "imported to be used in remanufacture by melting" specifies actual remanufacture by melting, and the submission of proof attesting to such fact, "under such regulations and within such time as the Secretary of the Treasury may prescribe."

The primary function of the court in the construction of a statute is, of course, to ascertain the legislative intent. Where, however, language is as carefully drawn as that here seems to be, and no ambiguity exists, there is little occasion to explore extraneous material to determine its meaning. *It*

*seems clear that if Congress had considered it desirable to have required that remanufacture of metal scrap take place in the United States, language to accomplish that purpose could easily have been inserted.* (Italics supplied.)

We have examined the legislative history of Public Law 869 as reflected in the various documents [1] referred to by the Government, but are unable to agree that the Customs Court erred. We have also examined the various decisions cited by the Government, including our decision in *United Metal Goods Manufacturing Company* v. *United States*, 46 CCPA 120, C.A.D. 712, wherein we considered the legislative history of Public Law 869, without finding them contrary to the holding of the Customs Court.

The judgment is *affirmed*.

---

[1] Senate Report No. 2259, August 9, 1950, U.S. Code Congressional Service, 81st Congress, Second Session, 1950, Vol. 2, Legislative History ;

Report of Ways and Means Committee of the House of Representatives No. 996, July 7, 1949.

